322-0059 Paul Berg, appellant by Daniel Herbert, v. Frank Kosman, athlete by Justin Taylor, and the Board of Fire and Police Commissions of the City of Chamberlain, members at all, athletes by John Howard. Mr. Herbert, if you're ready, you may proceed. Good morning. May it please the Court. Counsel. My name is Dan Herbert, and I represent the appellant in this case, Paul Berg. What brings us here today is we have a situation where a decorated, long-standing police officer for the City of Kankakee was terminated based upon a few minutes in a two-day period, July 15th and July 18th. It's important to look at this case, not in a vacuum, but to look at this case based upon the circumstances that were going on. Paul Berg, as I said, had been a dedicated, decorated police officer who was promoted to sergeant in 2016. All these events happened in 2020 on a two-day period. What happened prior to this, and this is not an employment discrimination case, but it's important for context here, is Paul Berg, he was passed over for the lieutenant position, and he was passed over by a lower-ranking police officer, sergeant, that was African-American. Paul Berg filed a complaint alleging discrimination. Once he did that, things changed for Paul Berg, and he was targeted specifically by the chief and set up for termination, and we know this through the hearing. What we're here today is to discuss whether or not the chief proved its charges, which they didn't, and fundamentally whether or not Paul Berg was afforded his due process rights. He was not. This is an officer that, again, had a good career with the police department. He has a property interest. He is afforded the right to have a fair hearing, and we understand it's an administrative hearing. It doesn't necessarily follow all the rules that would be followed in court, but the fundamental duty and right that Paul Berg had was the right to notice of what he was being charged with, and that's really where this case fell apart. Paul Berg was not provided proper notice for his charges. Notice, per Abrahamson, Paul Berg is supposed to have the opportunity to be heard in his case, to cross-examine witnesses based upon the charges and impartiality in ruling on the evidence. Paul Berg didn't have that hearing. He was given a hearing. He was allowed to testify. His lawyer, which was me, was allowed to cross-examine witnesses. However, there was no notice as to what the specific charges were. They changed at every stage of the pre-termination interrogation to the hearing, to after the hearing was done. Mr. Herbert, let's go back to that interrogation that you just mentioned. At the time of the interrogation, was the officer sworn before he began the interrogation? Yes, it was sworn. Okay. Did he ever state that he did not see Cosman at the courthouse, the Kankakee Courthouse? During his interrogation? Yes. He said at one point he did not see him. Did he state that he didn't hear Cosman at the Kankakee Courthouse? He did at one point, though. Okay. And did he say that he did not wave off or brush aside Cosman? He did say that he did not wave off or brush aside Cosman. Okay. And to that point, Your Honor, are those false statements, which is certainly what he was charged with? He was set up at the interrogation so that they can have additional charges. Did you watch the video? I did. Okay. And, yes, it appears that he made a gesture with his hand. But the questions were, did you see Chief Cosman at the gathering? He didn't. He said he didn't at one point. He certainly did at the point in which he was confronted by Chief Cosman. So that's not a false statement. It's like it has to be a specific question based upon specific details. Did he interact with Cosman before he stopped and walked away at the car? I don't believe so, no, Your Honor. What happened was, and that's important, obviously. Paul Berge maintained that he didn't see Chief Cosman originally, and he didn't hear Chief Cosman say, go back to your squad car. Well, the evidence in this case shows this was a demonstration. We can assume that it was relatively loud. He has a police radio on. There was radio traffic going on. And, per the Chief's testimony, Paul Berge was approximately 40 feet away from the Chief at the point in which the Chief allegedly made this direct order. And, again, it's important. Are we talking about a direct order? Because in order for the charges and determination to be warranted, there has to be a clear direct order so that the insubordination charge can be substantiated. What the Chief said was anything but a direct order. Paul, I want you, you know, go back, buy your car. Hesitation does not equal insubordination. Is it unreasonable for a decorated sergeant in the police department to hesitate when he is confronted by Commander Austin over something that he used proper discretion by not ticketing homeless people? He was confronted by an angry commander about that incident. Is he supposed to just say, yes, sir, you're right, and turn around and leave? Did he go back at all? I mean, didn't he go in the opposite direction of where his car was parked when you said the hesitation was that he hesitated? That's not insubordination. But didn't he go in the opposite direction of where he had been, under your scenario, told to go back to his car? He went, yeah, he was walking towards the demonstration, which is, you would think, where a police officer would go, and that's when the order was given, or that's when the command was given by the Chief. But important to realize here is he did go back to his car. In the first scenario, where he was alleged to be insubordinate for not leaving the office, he did leave the office. The first scenario was about 60 seconds. In the second scenario, it was a matter of minutes. And is that subordination? And I would submit that, first of all, it's a supervisor speaking with the Chief and speaking with another supervisor, albeit higher ranks. But is it unreasonable that a sergeant would defend himself? Is it unreasonable that a sergeant would voice an opposing position? Isn't that something that we want in the current state of policing? Do we want people to just take blind orders and do whatever is told to them, even when it's not in the best interest of the public? It's unreasonable. If Your Honors, and I know this wouldn't happen, if you told me right in the middle of my argument to shut up and leave the courtroom, first I would stand here bewildered, like, what did I say that offended you? Well, we're not a paramilitary organization, are we? You're not. And my understanding is that we now have, you know, different legislatures actually passing laws allowing or requiring people in subordinate positions to disobey certain orders where the community is in danger. But the point of me bringing that up is it's required legislation to otherwise discount what is a chain of command that seems to be very important in the context of law enforcement. Agreed, 100%. And that's the evidence is in Paul Berge's favor on that point. How? Because the chief testified that Paul Berge's alleged insubordination did not affect the department. It didn't have a negative effect on the department. And that's the, I believe it's the Hertz case. This was a disagreement and a flexing of their egos between a supervisor and a chief and a sergeant and a commander. That's all this was, but important, and I got away from it a little bit, is first of all, everything changed throughout the hearing. Paul Berge didn't know what his acts of insubordination were. The chief didn't know what they were. When I asked him on cross-examination, what are the insubordinate acts, he couldn't answer it. Then I gave him the charges that he drafted. He still couldn't answer what the insubordinate acts were. They tried, they threw everything against the wall, and the only thing that stuck was apparently he didn't react fast enough with the chief and he didn't react fast enough with the commander. Those aren't insubordinate facts. And they failed wholly to prove that these were, that this was insubordination per their policies. Commander Austin, and Paul Berge was charged with this, but the board found him guilty of violating direct order by not writing tickets to the homeless people. That's what the board found him guilty of. He wasn't charged with that, and important, Commander Austin testified that wasn't a direct order when I told him to do that, but he was charged with it. And also he, the board, improperly utilized his past discipline in its decision to fire him. They improperly did not allow him to introduce evidence that was relevant. The IDHR charge and the PowerPoint presentation of a supervisor's class that he was sent to by the village of Kankakee, which talked about how you need to use discretion and you need to not blindly obey orders, that was denied. He wasn't allowed to put an end to it. But direct orders are insubordination. A direct order has to be clear. The officer has to be on notice that this is a direct order and that if I don't follow this, I am going to be fired. There is nothing clear in their policies, village of Kankakee, or in case law, or in the facts of this case, that Paul Berge knew I am going to be fired if I don't get up here and leave immediately when Commander Austin told me to leave. I'm going to be fired if I don't return to my car and go back to the station immediately when the chief asked me to do that. He's not put on proper notice. The charges in this case, they evolved, as I said. Paul Berge had a right to defend himself. He had a right to defend himself against specific charges. As a public policy argument, it would be very detrimental to any department or any job if an employer can just target somebody and provide improper notice and terminate a longstanding officer who has children. This isn't a job at the office. This is a career. And Paul Berge was denied his right to notice, a fair hearing, and the due process. So my time is up. Mr. Peterson, any questions? I don't have any questions. Just to get in court? No further. Thank you. Thank you, Mr. Berge, on that opportunity to rebuttal. Mr. Taylor. Thank you. I am splitting time with Mr. Kelly. And based upon the times that you have provided, our able assistance will let you know when it's time to change pilots. May it please the Court, Counsel. My name is Jeff Taylor. I represent former Chief of Police Frank Kosman. In the time that I'm allotted here, I'm going to address the due process, the sufficiency of the interrogation, the sufficiency of the charges that were filed with the Commission. I think I need to give a little context to the record that is before the Court with respect to what led to the investigation. The dates at issue are July 15th and July 18th. On July 15th, Commander Donnell Austin went into the sergeant room to speak with Mr. Berge regarding an order to go out and monitor a location in Kankakee that they were having problems with. During that time frame, there is evidence in the record that orders given to Mr. Berge were ignored and there were accidents of ordination. Followed through to July 18th, when the Chief was monitoring a march protest, he saw Mr. Berge sitting on the sideline of the route. Mr. Berge was not assigned to that march or protest. And later on, the Chief pulled up and ultimately went to the Kankakee County Circuit Courthouse. The Chief saw Mr. Berge moving forward. Justice Davenport noted from the video, the Chief gave an order to Mr. Berge. He didn't want him to intermingle with the protesters. Go back to your squad car. I don't want you there. It is borne out on the video, although it doesn't have audio, that Berge looks at the Chief. You see him wave off the Chief, a direct violation of an order. Later on, a second order was given that day, when the Chief confronted Berge and told him, you need to go back to the station. At that time, Berge said, that's an illegal order. There was nothing illegal about that order. The Chief then said, you need to go back, to which Berge responded, you're a poor leader and would not leave the scene. It wasn't until Lieutenant Halfwater came to the scene, a white, lower-ranking officer, and asked Berge to follow the order of the Chief, to go back to the station, to which he did. I would also note, going back to July 15th, ironically, counsel indicated, the record indicates, that he filed and complied with the order. It wasn't complied with on the 15th, when Donald Austin told him to leave the office, until a white officer, lower-ranking, said, you should follow the order and leave. So the order really weren't followed. Those two days, July 18th and 15th, resulted in Berge being put on administrative leave. The administrative leave notice, indicated that he was putting on administrative leave, for purposes of a formal investigation, related to not following orders and insubordination, on July 15th and 18th. It also referenced policy numbers 200 and 300, of the Kentucky Police Department. Shortly thereafter, an interrogation was done. The notice of interrogation, read, in part, to determine whether you violated any rules, regulations, or department procedures, with respect to performance of your duties, failure to follow commands or orders, and insubordination, while on duty, on July 15th and July 18th. During that interrogation, Berge acknowledged, that he understood why he was there. During the interrogation, it was found that certain statements, made by Berge, were untruthful, when compared to a video, outside the courthouse, on July 18th. After that, charges were prepared. Charges contained three counts. Count one pertained to July 15th incident, in Donnell, Austin, and the failure to follow orders and insubordination. Count two pertained to the July 18th incident, and Chief Cosman, and the failure to follow orders and insubordination. And count three pertained to the untruthfulness of the interrogation. As we set forth in the brief, under the Uniformed Police Officer Disciplinary Act, the notice of interrogation need only be sufficient, to reasonably apprise an officer of the nature of the investigation. We cited the Ely v. Board of Fire, the police commission case, where there were simply allegations of an interrogation, or notice of an interrogation, that it was being conducted because of lewd or conduct unbecoming of an officer. No dates. The notice of interrogation in this case is far above the bar set by the Ely court. It gave notice of the dates, it gave notice of the failure to follow orders, it gave notice of the insubordination. He was sufficiently apprised, under the law, of what the purpose of the interrogation was. As I noted during the course of the interrogation, there was testimony found to be improper, and also untruthful. After the interrogation, charges were prepared. And I indicated three counts on the charges. The charges are extremely discreet. The charges lay out that, on count one, with July 15th, it pertained to orders... I don't want to interrupt you. Obviously, it's between you and co-counsel, but your time is up. All right. I'll just try to sum up here real quickly. If you look at the nature of the charges that we've set forth, and the law in support of those charges, it is unequivocal and clear that the charges are detailed enough to apprise Bergey of what was going to take place through the course of the due process hearing. Likewise, the same applies to the interrogation. Thank you very much. Thank you. Mr. Kelly. Good morning, Your Honors. Thank you. May it please the Court and counsel. I'm John Kelly. I'm the attorney for the Kankatee Board of Fire and Police Commissioners. With me today is also Erica Thomas, an attorney from our office who prepared the brief. As I start my argument, I want to address two particular points raised by counsel in his argument on behalf of Mr. Bergey. First and foremost, he argued that the chief testified that the insubordination did not affect the department. That is not what the record says. Page 460 of the record clearly states what the chief's testimony was, regarding the impact of that insubordination. And I think even more importantly, at page 504 of the record, the chief's statement was that he had never seen such serious insubordination in his career. And this is a man who had more than 30 years of service in the police department. So I think the argument that this insubordination did not impact the department is just simply not true. The other point I wanted to address is counsel said that Sergeant Bergey had to defend himself and did not take blind orders, orders that were not in the best interest of the public. Your Honors, I think that calls into question the real basis of this case. Who's going to determine what's in the best interest of the public? Is it going to be Sergeant Bergey, or is it going to be the city of Kankakee and the Kankakee Police Department? And I think the key problem with Sergeant Bergey's defense here is he thinks everything should be seen through his eyes, not through the eyes of the department and not through the eyes of the commission. As the court is well aware, any decision of an administrative body like the Fire and Police Commission must be upheld by the manifest way to the evidence, and that is some competent evidence. Sergeant Bergey's version of the events is that he did nothing wrong. He wasn't insubordinate. It didn't impact the department. He didn't lie during the course of the interrogation. The record is totally opposite. The record is replete with testimony by Commander Austin, Lieutenant Passwater, Sergeant Tyson, Sergeant Kropp, all of which rebut Mr. Bergey's positions in this case. Simple thing like the insubordination that took place in the sergeant's office. Counsel limited that to him not leaving the office, but there was far more that took place. Number one, it took place in the sergeant's office with other people present. Number two, Sergeant Bergey answered a phone call and refused to stop answering the phone call in the presence of Commander Austin after Commander Austin told him four times to put the phone down. He got up into Commander Austin's face. He refused to leave until another sergeant in the office said, you better go. In fact, a sergeant who was a union representative said, hey, it's probably good that you go. So it wasn't a simple he refused to obey Commander Austin's order. It was a series of events in that sergeant's office that day. And a similar analysis could be applied to the incident that took place at the courthouse. In terms of counsel makes a couple of other arguments in their brief. Number one, that the penalty wasn't appropriate. We certainly believe the penalty was appropriate. Given the seriousness of these charges, insubordination and untruthfulness, I don't think we could find two qualities that are more important for a police officer than following commands, being in a paramilitary organization, as Your Honor noted, and being truthful. In fact, there are many cases, both from the federal level, the state level, even from the Illinois Supreme Court, that mandate police officers be truthful. Because if they're not, that information must be turned over to the defense in any pending criminal case. So one act of untruthfulness, given Sergeant Berge's responses in the interrogation, is simply enough to terminate him based on that alone, not even including the insubordination. And again, going back to what the chief said, it was the most serious case of insubordination that he ever seen. I'm not going to spend a lot of time talking about the due process arguments, because Mr. Taylor addressed those. The one thing I do want to say about that, while counsel cites to the Abramson case, which is good law, that's fine. More specific in this case is the wording of the Board of Fire and Police Commissioners Act. Section 17 of the Act gives very specific guidelines for due process. Notice, opportunity to be heard, opportunity to be cross-examined witnesses. The record absolutely sustains the commission giving him that process that is due under the terms of the Board of Fire and Police Commissioners Act. The last argument that I wanted to touch on was at page four of Sergeant Berge's brief, they referenced the commission exceeding its jurisdiction. I'm puzzled as to what that means, because number one, they submitted to the hearing. As the court well knows, if somebody is challenging jurisdiction, you can't submit to the hearing. And more importantly, there is no argument, no basis for what jurisdiction the commission lacked to hear this case. As I indicated, the Board of Fire and Police Commissioners Act gives very specific authority to the Board of Fire and Police Commissioners to hear these kinds of discipline cases. Without some further detail or information as to why Sergeant Berge felt the board exceeded its authority, I think that that argument, in fact, was waived. Bottom line here is, we believe that the commission's decision is supported by more than competent evidence, actually all of the evidence, and that the punishment of termination was, in fact, appropriate in this case. Thank you. Mr. Stevenson? I have no questions. Mr. Davenport? No questions. Thank you, Mr. Kelly. Thank you. Mr. Herbert of Bubble? Thank you. Following direct orders, that is important for a police department. But following orders that benefit and serve the public are the orders that need to be followed. In this case, we have a situation where Berge was charged with violating direct order, that he didn't write the homeless people tickets, and that he wanted to go commingle with the crowd. Was he actually ordered to write homeless people tickets, or was he ordered to monitor a specific site where there were problems? That's a great question, because the charges, he was found guilty of not writing tickets. I'm asking, what was the order? Was it to monitor a specific site that an alderman had a question about for a property, or was he ordered go out and write tickets for the homeless? There's no clear answer to that, because Austin said that he told Berge that he had to go write tickets, but Austin testified that that was not a direct order. The evidence shows that the area was monitored by Berge and his team. But the point is, when Berge was given direct orders not to do or to do, to do, write homeless people tickets, monitor, what is that based upon? He wasn't charged with violating his duties by not writing tickets because the policy indicates, Kiki Key's policy indicates, you can use discretion, and common sense dictates, why are we going to ticket homeless people that aren't going to pay the fine? Counselor, isn't discretion, doesn't that come along when you don't have any orders from higher office? That's when an officer exercises discretion. If a subordinate officer has an order, he no longer has discretion. Fair? Respectfully, I would disagree. If they ordered him to go shoot homeless people or something insane, okay, I get your argument. But go monitor this if people are violating the statute, whether they're homeless or not, write some tickets. We need to do something. At that point, you're saying he still had the discretion to say, no, I'm not doing it. That's your argument? I would say yes. Because the training within the Kiki Key Police Department was, you can use discretion in these situations, and there was specific training and policies regarding homeless people and how to treat them essentially differently, to treat them better. But the important thing here, these direct orders were not something that were for the benefit of the community. Paul Berge wanted to go commingle with the crowd because he's a sergeant in the police department. He's not charged with being at the parade improperly violating his duties. There's no charges that him wanting to mingle with the crowd was somehow against the department policy. So why is it unreasonable that he would have hesitation for doing what the policy dictates? And that's both of the direct orders that he's charged with insubordination. He wasn't charged with acts of misconduct related to what he didn't do and what he wanted to do in the second situation, wanted to go commingle with the crowd. Wasn't charged with any violation of being there or going to commingle with the crowd, not writing homeless people tickets, not monitoring. First of all, the evidence shows it was monitored. Yes, he didn't write homeless people tickets. He wasn't charged with the violation of his duties related to that. So those direct orders, to Your Honor's question, yes, it's reasonable for a supervisor to say, why can't I go commingle with the crowd? There's young kids here. Don't we want to promote the police department? Why am I writing homeless people tickets? It doesn't make sense. That's the basis here. But the important point, I think, in this case, Your Honors, is the notice issue. The notice of interrogation, they can make an argument, some fair points, that perhaps that was enough notice. But the notice of the charges and the decision in this case where Paul Berger was found guilty of acts that weren't charged, policies that weren't alleged in the charges, those are the notice issues that, respectfully, we believe were fundamental and violated. So unless there's any other questions, I appreciate your time. No further questions. Thank you. Thank you. The court thanks both sides for spirited arguments. We will take the matter under advisement and render a decision in due course. Court is adjourned.